**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**COLONY INSURANCE COMPANY,**

     **Plaintiff,**

**v.**                              **Case No.  8:09-cv-1469-T-30MAP**

**MONTECITO RENAISSANCE, INC.,**
**et al.,**

     **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Second Motion for Summary

Judgment (Dkt. 48), responses in opposition furnished by Defendants (Dkts. 53, 54, and 84),

a Second Motion for Summary Judgment (Dkt. 97) submitted by Defendant The Avalon at

Clearwater Condominium Association, Inc., ("Avalon"), and Plaintiff's Response in

Opposition (Dkt. 98).   The Court, having considered the motions and responses, and being

otherwise advised, concludes that Plaintiff's Second Motion for Summary Judgment should

be granted, and that Avalon's Second Motion for Summary Judgment should be denied.

### Background

Plaintiff Colony Insurance Company ("Colony") brings this action seeking a

declaratory judgment that it has no duty to defend, and/or indemnify its insureds in an

underlying state case currently pending in the Circuit Court for the 6th Judicial Circuit in Pinellas County, Florida.

Defendant Montecito Renaissance LLP ("Montecito" or "Developer"), owned an apartment building located in Clearwater, Florida. Montecito later decided to convert this apartment building to a condominium complex. Towards that end the Developer, among other things, legally converted the apartment complex to condominium ownership, created a condominium association, and made various repairs to the buildings in order to better market and sell the individual condos.

The formal "Declaration of Condominium," filed on April 25th, 2005, created the Avalon Condominium Association, a Defendant in this action and the Plaintiff in the underlying state court case. The Developer sold a number of units around this time. On May 24, 2005, Colony issued a Commercial General Liability ("CGL") Policy to Montecito Investment, a non-party to this action. By endorsement, the Developer was named as an additional named insured. This insurance policy ran from May 24, 2005 until May 24, 2006.[1]

Montecito's CGL policy protected it and other insureds from third-party liability for "bodily injury" and "property damage" caused by an "occurrence" taking place in the "coverage territory" and during the policy period. The policy also contained various exclusions. Notably, in addition to standard CGL exclusions, the policy contained a

---

[1]The primary purpose of CGL policies is to protect companies from third-party liability incurred as a result of that company's business operations. Such policies are not meant to serve as first-party insurance; thus, in addition to other exclusions, coverage is generally not available to pay for damage to property that the company owns, and/or to compensate a company to repair its own defective work.

"Designated Work Exclusion" which excepted the insurer (Colony) from liability for "all construction operations pertaining to apartment to condominium conversion."

Some time after the Declaration of Condominium was filed, the Developer entered into a "turnkey" contract with Paramount Development and Construction, LLC ("Paramount").  Under the terms of the contract, Paramount was to undertake certain repairs to the complex in furtherance of the marketing and selling of individual condominium units. *Inter alia,* the contract called for Paramount to correct defects in the complex's roof, stucco system, and landscaping.  Paramount started this work on or about June 13, 2005, and completed the work on or about October 15, 2005.  Some time after the unit owners took control of the Condominium Association (November 21, 2005), the Association sued the Developer, Paramount, and others.

Avalon alleges various counts against the Developer and others in the currently pending state court action.  *Inter alia,* Avalon alleges that the Developer: (1) failed to adequately fund converter and capital reserves as required by Florida law; (2) converted some of the money meant for these reserves; (3) engaged in fraud in the inducement and negligent misrepresentation by failing to make required disclosures in the "Final Disclosure of Building Conditions Report" (the "AASI report") and in the "The Avalon at Clearwater, A Condominium Prospectus" (the "Prospectus"); (4) breached various warranties and fiduciary duties, and; (6) defectively repaired the apartment/condominium complex, thus generating claims for waste, breach of warranty, and negligence.

Colony argues that all of these causes of action are either not covered by its policy or are excluded by various provisions contained in it.  Thus, Colony contends that it has no duty to defend, and/or indemnify any of its insureds in the underlying state court action.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor.  *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  *Celotex,* 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989).

## Discussion

### A.    Potential Coverage for Counts I-XVI Under Colony's Insurance Policy

In its Revised Third Amended Complaint ("RTAC") in the underlying state court action, Avalon alleges a total of sixteen counts against the Developer and others. Colony seeks a declaratory judgment that is has no duty to defend, and/or indemnify any of these counts. In its own Motion for Summary Judgment (Dkt. 97), Avalon concedes that counts I-VI, VIII, and X-XII, as pled, are not covered by the Colony Insurance Policy; however, as other Defendants have not made such concessions, this Court will examine these counts as well.

### The Interpretation and Construction of Insurance Contracts in Florida

The interpretation and construction of an insurance contract is a question of law to be decided by the Court using generally accepted rules of contract construction. *National Union*

*Fire Ins. Co. of Pittsburgh, PA v. Underwriters at Lloyd's, London,* 971 So.2d 885, 888 (Fla. 3rd DCA 2007); *U.S. Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So.2d 871, 877 (Fla. 2007).   In Florida, insurance provisions granting coverage are to be construed broadly, while exclusions are to be read narrowly. *Westmoreland v. Lumbermens Mut. Cas.Co.,* 704 So.2d 176, 179 (Fla. 4th DCA 1997).

Insurance contracts are to be interpreted and construed in a manner that is "reasonable, practical, sensible, and just." *Doctors Co. v. Health Mgmt. Assocs., Inc.,* 943 So.2d 807, 809 (Fla. 2nd DCA 2006).   Terms are to be given their plain and ordinary meaning and the language of the policy will control unless such language is ambiguous. *Bethel v. Sec. Nat'l Ins. Co.,* 949 So.2d 219, 222 (Fla. 3rd DCA 2006).

An insurance policy is ambiguous if "the relevant policy language is susceptible to more than one reasonable interpretation." *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 331 Fed.Appx. 640, 645 (11th Cir. 2009).   However, the mere fact that parties argue for different interpretations does not make a policy ambiguous and a court will not construe an insurance policy to reach an absurd result. *Deni Assocs of Fla. v. State Farm Fire & Casualty Ins. Co.,* 711 So.2d 1135, 1140 (Fla. 1998).

If a policy is ambiguous and extrinsic evidence fails to clear up the ambiguity, a court will construe the policy *against the insurer* as the draftsman of the policy. *U.S. Fire Ins. Co.,* 979 So.2d at 877.

## I.      Count I

Count I of the underlying Complaint filed in state court is a claim for declaratory relief.  Specifically, Avalon asks the state court to declare that the Developer Montecito failed to properly fund converter reserves (reserve funds for repairs) as required under Florida law.

As discussed above, the Colony Insurance Policy only covers "bodily injury" or "property damage" which was "caused" by an "occurrence."  As Count I of Avalon's RTAC fails to allege either "bodily injury" or "property damage" as comprehended by the policy, it is not potentially covered.

The allegation of Count one is that the Developer failed to adequately fund the converter reserves, and hence, failed to pay Avalon money owed to it.  Such an economic injury does not meet the policy definition of "property damage," defined as "[p]hysical injury to tangible property, including all resulting loss of use that property."  *See, e.g., Mullin v. Travelers Indemnity Co. Of Connecticut,* 541 F.3d 1219, 1223-24 (10th Cir. 2008); *Johnson v. Amica Mut. Ins. Co.,* 733 A.2d 977, 979 (Me. 1999).  Nor does it meet the definition of "bodily injury."  Thus, Count one is not potentially covered by Colony's insurance policy.  Notably, Avalon has previously conceded that this count is not potentially covered.

## II.     Count II

Count II of the RTAC, *inter alia,* asks the state court to order the Developer to refund to Avalon sums allegedly improperly retained by the Developer from the proceeds of the condominium unit sales.

Count II similarly fails to allege the occurrence of "property damage" as understood by the policy.  On the contrary, Avalon alleges merely an economic injury, a type not covered by the policy.  Notably, Avalon has previously conceded that this count is not potentially covered.

## III.     Count III

Count III asks for an equitable accounting and a constructive trust.  Here, the alleged injury is that Developer wrongfully appropriated funds meant for Avalon.  As this count once again pleads an "economic injury," it fails to allege "property damage" or "bodily injury" and is therefore not potentially covered by Colony's insurance policy.  Notably, Avalon has previously conceded that this count is not potentially covered.

## IV.     Count IV

Count IV is a claim for conversion.  The alleged injury is that the Developer wrongfully appropriated funds meant for Avalon.  As this count also pleads merely an "economic injury," it is therefore not potentially covered by Colony's insurance policy. Notably, Avalon has previously conceded that this count is not potentially covered.

## V.    Count V

Count V alleges, *inter alia,* that the Developer and others intentionally understated replacement costs and intentionally overstated useful lives, thus enabling the Developer to improperly and insufficiently fund reserves.  The underlying injury here is that Avalon failed to receive the funds necessary to properly maintain the property.  This is an economic injury, not "property damage" or "bodily injury" and thus does not fall within the terms of the Colony policy.   Notably, Avalon has previously conceded that this count is not potentially covered.

## VI.    Count VI

Count VI of the RTAC alleges fraud in the inducement.  Specifically, Count VI alleges that the Developer "made a false statement of material fact when it published the Prospectus...that stated [Developer] would fund converter reserves...[when] Developer had a specific intention of not doing so at the time."   (RTAC ¶ 169).  This alleged fraud purportedly resulted in Avalon receiving insufficient reserve funds.

This count of the Complaint also fails to properly allege "property damage" as comprehended by the policy.  Again, the underlying injury here is that Avalon failed to receive funds allegedly owed to it.  This is an economic injury, not "property damage" or "bodily injury" and thus does not fall within the terms of the Colony policy.  Notably, Avalon has previously conceded that this count is not potentially covered.

## VII.   Count VII

Count VII alleges that the Developer and others negligently misrepresented in the Prospectus the amount of converter and capital reserves to be funded to the Condo Association (Avalon).  Such deficient funding purportedly left Avalon with insufficient funds with which to make repairs.  Avalon further argues that this inability to fund necessary repairs led to "property damage" due to the resulting deterioration of the property.  In short, Avalon alleges that there was an "occurrence" (negligent misrepresentation) that caused "property damage."   Avalon therefore contends that Count VII should be covered by Colony's insurance policy.

Under Colony's CGL policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The Supreme Court of Florida has stated that the term "accident," when left undefined in a CGL policy, as here, includes "injuries or damage neither expected nor intended from the standpoint of the insured," in addition to encompassing accidental events.   *Koikos v. Travelers Ins. Co.,* 849 So.2d 263, 267 (Fla. 2003) (quoting *State Farm Fire & Casualty Co. v. CTC Development Corp.*, 720 So.2d 1072, 1075-76 (Fla. 1998)) (emphasis omitted).

Unfortunately, no Florida court has ruled on the issue of whether negligent misrepresentation can constitute an "occurrence" under a CGL policy.  Moreover, there is a split of authority among courts that have considered the issue.  Some courts have found that negligent misrepresentation can constitute an "occurrence" as long as the resulting damage was unforseen or unexpected.  *See, e.g., Sheets v. Brethren Mutual Ins. Co.,* 342 Md. 634,

652 (Md. 1996). Others, apparently the majority, have held that negligent misrepresentation does not constitute an "occurrence" for purposes of coverage under a CGL policy. *See, e.g., Chatton v. National Union Fire Ins. Co. of Pittsburgh*, 13 Cal.App.4th 846, 861-862 (Cal. Ct. App. 1992) (the tort of negligent misrepresentation is not an "accident" as it contains an intentional element; specifically, the intent to induce reliance).

Even assuming that a "negligent misrepresentation" can constitute an "occurrence" in Florida for purposes of coverage under a CGL policy, it is nonetheless clear here that the alleged negligent misrepresentation did not *cause property damage.* Thus, this Court need not decide whether a "negligent misrepresentation" can constitute an "occurrence" under Florida law.

Here, the alleged "negligent misrepresentation" did not "cause property damage" for two reasons. First, Count VII fails to properly allege "property damage" as comprehended by the policy.

The underlying injury of Count VII is that Avalon was deprived of its rightful reserve funds. As discussed above, such a failure to receive a debt is an economic injury that does not constitute "physical injury to tangible property," and thus is not "property damage" under the policy. Moreover, the fact that Avalon's failure to receive this money allegedly prevented it from making repairs to property (and thus purportedly led to the deterioration of the property) does not transform this failure to receive a debt into "property damage." To hold otherwise would be to sanction an unparalleled enlargement of CGL coverage, effectively turning CGL insurers into guarantors of their insured's debts. This Court declines

to make such an unwarranted expansion. In short, because this count fails to adequately allege "property damage," it is not potentially covered by Colony's policy.

Second, even had Count VII properly alleged "property damage," it is nonetheless clear that such damage was not *caused* by the purported negligent misrepresentations. Indeed, the alleged failure of Developer and others to make adequate and truthful disclosures in the Prospectus *did not cause* any of the alleged physical defects found in the condominium complex. On the contrary, any such physical damage was caused by defective construction, and/or maintenance of the property.

As Count VII fails to allege an adequate causal nexus between the alleged "negligent misrepresentation" and the purported "property damage," it is not potentially covered by Colony's policy. *See, e.g., Bush v. Shoemaker-Beal,* 26 Kan.App.2d 183, 184-185 (Kan. Ct. App. 1999) (termites caused property damage, not seller's non-disclosure of termite infestation; therefore, negligent misrepresentation did not cause property damage and consequently negligent misrepresentation claim was not covered by the seller's insurance policy).

For the above reasons, Count VII is not potentially covered by Colony's insurance policy.

## VIII.  Count VIII

Count VIII alleges fraud in the inducement.  Specifically, Count VIII contends that the Developer and others made fraudulent misrepresentations in the AASI "Final Disclosure

of Building Conditions" report which purportedly resulted in Avalon obtaining insufficient reserve funds.

The underlying injury alleged in this count is that Avalon failed to receive funds purportedly owed to it. For the reasons stated above, this is an economic injury, not "property damage" or "bodily injury" and thus does not fall within the terms of the Colony policy. Notably, Avalon has previously conceded that this count is not potentially covered.

## IX.   Count IX

Count IX, for negligent misrepresentation, alleges, *inter alia,* that the Developer and others negligently failed to disclose material defects in the AASI "Final Disclosure of Building Conditions" report, intending that Avalon and the individual unit purchasers would rely on the report. Among other things, Avalon alleges that the Developer failed to disclose rotted fascias, mold and mildew, cracked stairway wall caps allowing water infiltration, a damaged retaining wall, inadequate gutters and downspouts, and soil erosion adjacent to the building foundation. (RTAC ¶ 294).

Avalon alleges that the negligent failure to disclose these defective conditions led to the funding of insufficient reserves. According to Avalon, the "failure to disclose the defects documented in the Land America Report...was negligent and with the purpose of evading requirements for funding converter reserves and to induce purchase prices for units greater than the market would justify if the Developer had made full and truthful disclosures of conditions." (RTAC ¶ 301). Avalon further alleges that these misrepresentations deprived Avalon of both the knowledge of the need to make any repairs and of the funds to do so.

Avalon contends that such accusations adequately plead "property damage" as comprehended by the policy.[2]

In short, Avalon argues that Count IX properly pleads an "occurrence" (negligent misrepresentation) that caused "property damage." (*inter alia,* lack of adequate reserve funds with which to make repairs, and water intrusion damage).

As discussed earlier, Florida courts have not yet decided the question of whether "negligent misrepresentation" constitutes an "occurrence" under a standard CGL policy. Moreover, courts that have considered the issue have come to divergent conclusions.

Here, even assuming that negligent misrepresentation can constitute an "occurrence" in Florida, it is nonetheless clear that the Developer's alleged negligent misrepresentations failed to *cause property damage*; thus, this Court need not decide at this time whether a "negligent misrepresentation" can constitute an "occurrence" under Florida law.

First, to the extent that the alleged injury is a failure to receive adequate reserve funds, the Count pleads only economic damages and therefore fails to properly plead "property damage" or "bodily injury."  Such a claim is not potentially covered by Colony's insurance policy.

Second, to the extent that the alleged injury is physical damage to property purportedly caused by the non-disclosure of alleged material defects, it is also not potentially

---

[2]In addition, Count IX alleges that the Developer negligently misrepresented that it would repair certain defects with the apartment/condominium buildings.  These defects were to be repaired by Paramount. To the extent this count alleges damage arising from this repair work, it is excluded by the "Designated Work Exclusion," as discussed in detail later in this Order.

covered by the policy; for the reasons laid out below, such a claim fails to properly allege an occurrence that *caused property damage*.

The question of whether the negligent non-disclosure of defects by sellers of real property can be said to have caused the physical damage to property later discovered by the purchaser has been addressed by several courts.[3]  Multiple courts have held that such a claim fails to adequately allege "property damage."

For example, in *State Farm and Casualty Co. v. Brewer*, 914 F.Supp. 140 (S.D. Miss 1996), the Court decided the question of whether the seller's non-disclosure of a termite infestation was an "occurrence" that caused "property damage." *Id.* at 142.  The Court found that it was not.  Upon surveying several cases which had considered similar issues, the Court stated that: "[t]hese cases are virtually unanimous in their holdings that damages flowing from misrepresentation and/or fraud have no basis in property damage; rather, the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the scope of coverage." *Id.*   The basic idea is that the essence of these non-disclosure of defects complaints is that the purchaser of the property failed to obtain the benefit of his bargain; for example, the purchasers in the *Brewer* case received a home infested with termites instead of the pest-free home bargained for.  Such claims are thought by many courts to merely plead an *economic* harm.

---

[3]No Florida court has addressed this issue.  As previously discussed, Florida courts have not ruled on the issue of whether "negligent misrepresentation" can constitute an "occurrence" for purposes of coverage under a CGL policy.

The situation is similar here.  Avalon essentially alleges in this Count that they failed to receive the property that they bargained for.  They actually received a defective property badly in need of repairs, and thus failed to receive the property that they bargained for.  Under the authority of *Brewer* and similar cases, Avalon has failed to show "property damage" that was caused by an occurrence.

This is not the end of the inquiry, however, as the cases that have considered this issue are not unanimous.  Indeed, Avalon cites a case to the contrary, which holds that the negligent non-disclosure of defects can result in "property damage."  *Sheets v. Brethern Mutual Ins. Co.,* 342 Md. 634, 658  (Md. 1996).  Moreover, the *Sheets* court held that "negligent misrepresentation" can constitute an occurrence that *caused* property damage, potentially allowing a negligent misrepresentation to be covered under a CGL policy in a non-disclosure of defects situation.

In *Sheets*, the sellers of real property allegedly negligently misrepresented that the septic system was in good working condition.  *Id.* at 637.  This non-disclosure allegedly caused a couple and their nine children to move into a farm-house, which led to the septic system malfunctioning and overflowing due to a family too large to use the septic system moving into the farm-house.  *Id.* at 643.  Holding that a negligent misrepresentation could constitute an "occurrence' in Maryland, and that the loss of use of the septic system constituted "property damage," the Court found that such "occurrence" could be said to have *caused* the property damage as the non-disclosures were explicitly alleged to have caused the homeowners to take affirmative actions (moving into the farm-house and utilizing the septic

system with their large family) which in turn were alleged to have caused the property damage. *Id.*

Here, even if this Court were to assume two highly controversial propositions: (1) that negligent misrepresentation can constitute an occurrence in Florida, and; (2) that Florida Courts would recognize Avalon's alleged damages as "property damages," Count IX would still not be potentially covered by the policy as Count IX fails to adequately allege that the Developer's negligent misrepresentations *caused* the property damage.

Indeed, unlike the situation in *Sheets,* Avalon has not alleged that the purported misrepresentations caused it or anyone else to take any affirmative actions which led to or caused the purported property damage.  On the contrary, just as the physical damage in *Brewer* was caused by the termites, not by the seller's alleged non-disclosures, the purported physical damage to the property here was presumably caused by defective construction, and/or maintenance, *not* by the Developer's misrepresentations.  Notably, if the alleged defects had not already "occurred" there would have been nothing for the Developer to disclose.[4]

Finally, even if Count IX successfully pleads an "occurrence" that caused "property damage," and thus would be covered by the policy, it would nonetheless be excluded by various provisions in the Colony policy.

---

[4]In addition, the purported defects causing the alleged damage to the property would need to be fixed regardless of whether the Developer failed to disclose them.

First, to the extent that the alleged damage did not arise from Paramount's construction repair work, any alleged damage would be excluded by exclusions j(1) and/or j(2).

Exclusion j(1) excludes "property damage" to "property you own, rent or occupy."[5] Exclusion j(2) excludes "property damage" from "[p]remises you sell, give away or abandon, if the 'property damage' arises out of any part of those premises."[6]   "You" is further defined as a "Named Insured" defined in the policy.  As the Developer is a "Named Insured," the property it owned and sold are covered under these exclusions.[7]

Here, all of the property in question was either owned or sold by the Developer. Consequently, any damage that was not the result of Paramount's allegedly defective construction work would have either constituted damage to property that the Developer owned, or have arisen out of "part of [the] premises" which it sold.

Second, to the extent that such damage was caused by Paramount's allegedly defective construction repair work, it would be excluded by the "Designated Work Exclusion" to the policy, as discussed in detail below.

---

[5]Damage to owned property is typically excluded in CGL policies as such insurance is not intended to provide the insured with first-person coverage.

[6]Damage to sold property is typically excluded in part to prevent recovery for non-disclosure of defect claims like the one at issue here.

[7]This Court disagrees with Avalon's contention that the meaning of "you" as defined in the policy is ambiguous.  *See, e.g., Oregon Mutual Ins. Co. v. Highland Court LLC*, 2009 WL 779268, *3 (W.D. Wash.) (the Court, interpreting a similar provision, states that the definition of "you" is unambiguous, and clearly excludes from coverage claims of property damage to property owned by the Named Insured).

For all of the above reasons, Count IX is not potentially covered by Colony's CGL insurance policy.

## X.  Count X

Count X of the complaint states that, by failing to properly fund the converter reserves, the Developer was deemed to have granted individual unit owners implied warranties of fitness and merchantability.  Avalon further contends that the Developer breached those warranties.  As the underlying alleged injury is Avalon's failure to receive funds owed to it, this count alleges an economic injury.  Accordingly, it fails to plead "property damage" or "bodily injury" and thus is not potentially covered by Colony's insurance policy.  Notably, Avalon has previously conceded that this count is not potentially covered.

## XI.  Count XI

Count XI alleges that individual Defendants Pearson Clark, and Ebers, as officers of the condominium board prior to turnover, breached their fiduciary duties to the Association and individual unit owners by, *inter alia,* failing to properly reserve funds for Avalon, and failing to disclose material defects in the property.  For the reasons previously stated, such claims are not potentially covered by Colony's policy.  Notably, Avalon has previously conceded that this count is not potentially covered.

## XII.   Count XII

Count XII does not include any allegations against any of Colony's insureds; accordingly, this count is not potentially covered by Colony's policy.  Notably, Avalon has previously conceded that this count is not potentially covered.

## XIII.   Count XIII

Count XIII alleges that individual defendants Pearson, Clark, and Ebers breached their fiduciary duties by failing to ensure that the Developer adequately funded converter reserves. Once, again, the alleged underlying injury of this count is that Avalon failed to receive money owed to it.  For the reasons stated above, such a claim for economic damages fails to allege either "property damage" or "bodily injury."   Thus, this count is not potentially covered under Colony's policy.

## XIV.   Count XIV

As previously discussed in the background section, Developer Montecito contracted with Paramount to undertake various repairs to the apartment/condominium complex in 2005. Avalon alleges in its RTAC that Paramount's work was defectively performed.  Count XIV alleges that such defectively performed work constitutes waste.  Moreover, Avalon contends that such an action for waste is covered by the Colony insurance policy.

### 1.   Paramount's Construction Repair Work

Developer Montecito owned an apartment building located in Clearwater, Florida and later decided to convert this apartment building into a condominium complex, the Avalon at Clearwater.  Before it sold any condominium units the Developer surveyed the property and

found certain deficiencies; for examples, problems with the roof, stucco system and landscaping . Upon discovering such problems, the Developer decided to make various repairs to the complex in an effort to better market and sell the condominium units. Accordingly, the Developer attached an addendum to its standard contract of sale document stating that it would undertake various repairs to the Condominium property.

The Developer ultimately decided to delegate this repair work to Paramount. Paramount started this repair work on approximately June 13, 2005, and completed the work on or about October 15, 2005. It is undisputed that: (1) all of this work was performed after the formal declaration of condominium was filed on April 25, 2005; (2) after some units had already been sold, and; (3) all of the work was completed before the Developer relinquished control of the Association to the individual unit owners on November 21, 2005.

In its RTAC, Avalon alleges that Paramount's allegedly deficient construction repair work constitutes waste. Moreover, Avalon alleges both that the Developer is responsible for such work and that it constitutes an "occurrence" which caused "property damage." In short, Avalon alleges that Count XIV is covered by Colony's insurance policy.

Colony argues that even if Paramount's defective work constitutes an "occurrence" which caused "property damage," such a claim is excluded by the policy's "Designated Work Exclusion" which, it says, excludes all damage due to this construction repair work. Whether or not Avalon's claim for waste is potentially covered by Colony's insurance policy turns on the applicability of this designated exclusion.

## 2.        The Designated Work Exclusion

Colony's Insurance Policy contains a "Designated Work Exclusion" as an endorsement to the policy; a specific provision which modifies the terms of the standard GCL policy.  The exclusion states, in pertinent part, that "this insurance does not apply to... 'property damage' included in the 'products-completed operations hazard' and arising out of 'your work' shown in the Schedule."   The  Schedule defines "your work" as "all construction operations pertaining to apartment to condominium conversion."

Avalon argues that the exclusion does not apply to Paramount's construction repair work because: (1) the construction repair work did not "pertain to" the "apartment to condominium conversion," and; (2) even assuming that the construction repair work did pertain to the conversion, the exclusion should not bar coverage as the construction work was performed by Paramount, a sub-contractor of the Developer.

### i.        Did the Construction Repair Work "Pertain to" the "Apartment to Condominium Conversion?"

Avalon argues that the construction repair work performed by Paramount in 2005 did not "pertain to" the Developer's "apartment to condominium conversion."  Avalon contends that, at the very least, the terms "apartment to condominium conversion" and "pertain to" are ambiguous.  As a result, Avalon asks this Court to declare the entire exclusion to be ambiguous, and to accordingly rule in favor of the insured in accordance with the *contra proferentem* rule of contract construction.

First, Avalon asserts that as the term "apartment to condominium conversion" is not defined in the policy, it should be given a narrow construction, and be held to refer to merely the legal process of condominium conversion. Second, Avalon argues that the term "pertain to" is ambiguous and should be accordingly read narrowly as "necessary to." In short, Avalon alleges that the clause should be read as "all construction operations *necessary* to the *legal process* of condominium conversion."

Avalon further argues that since it is undisputed that all of the construction repair work took place *after* the filing of the Declaration of Condominium (and thus after the completion of the legal process of conversion) it follows that the Designated Work Exclusion can not apply to the construction repair work performed by Paramount.[8]

This Court disagrees. First, this Court concludes that the "construction operations" need not be "necessary" to the "apartment to condominium conversion," but need only to "concern" or "relate" to the conversion process in order to be within the exclusion. While Avalon argues that the exclusion should be read as only covering construction operations *necessary* to the process of condominium conversion, this interpretation is simply not supported by the plain language of the exclusion.

As an initial matter, it is worth noting that *no* construction operations are *necessary* to the legal apartment to condominium conversion process, any more than such operations

---

[8]While Avalon concedes that *some* types of construction work, such as the construction of common elements or "the construction of walls to create unit boundaries" would fall under the aegis of the exclusion, it maintains that Paramount's construction repair work decidedly does not qualify as construction work "pertaining to" the conversion.

are necessary to the filing of a legal brief.  If the Court were to hold that covered construction operations must be necessary to the legal process of condominium conversion, this Court would sanction an absurd result.

Moreover, the plain language belies such an interpretation.  Despite Avalon's contentions, the term "pertain" is not ambiguous.  Indeed, Avalon itself points out that the term is defined by Black's Law Dictionary as "to relate; to concern."  Such a construction of the term "pertain" decidedly does not connote any notion of necessity; if it did, the term "necessary relationship" would be redundant.  On the contrary, the term "pertain," meaning "to relate" or "to concern" is unambiguous.

In sum, Avalon's interpretation that covered construction operations must be necessary to the apartment to condominium conversion is simply not supported by the plain language of the contract.  On the contrary, the plain language makes it clear that the construction operations merely have to *relate to* or *concern* the "apartment to condominium conversion."

Second, Avalon's contention that Paramount's construction repair work cannot "pertain to" or "relate to" the conversion because it took place after the filing of the Declaration of Condominium is unavailing.  It is clear that an event happening at time B can "relate back" to or "concern" an event that happened at an earlier time A.  There is simply no requirement that two events must be contemporaneously conjoined in order "to relate" or "to pertain" to each other.

Thus, even assuming Avalon's controversial proposition that the filing of the Declaration of Condominium consummated the "apartment to condominium conversion," (with the result that all of the construction work took place after the conversion) it would simply not follow that the construction work therefore did not relate to or concern the conversion. To hold otherwise would allow a Developer to escape a bargained-for exclusion of construction-related work simply by filing the Declaration early. Sound public policy advises against such a holding.

In short, this Court rejects Avalon's contention that construction operations were not covered under the exclusion if they were not necessary to the legal process of condominium conversion, and/or if such operations were performed after the filing of the Declaration of Condominium. Instead, in accordance with the plain language of the exclusion, this Court holds that covered "construction operations" merely need to "relate to" or "concern" the "apartment to condominium conversion."

Although this Court concludes that covered construction operations must merely *relate* to the condominium conversion process, it still must decide whether Paramount's repair operations did in fact so relate. In doing so, the Court must determine what types of construction operations might relate to an "apartment to condominium conversion."

Whether or not the term "apartment to condominium conversion" refers merely to the *legal process* of conversion (as contended by Avalon), the plain language of the exclusion makes it clear that it is meant to encompass *some* type of "construction operations;" to rule

otherwise would be to delete by judicial fiat the bargained-for term "construction operations" from the exclusion, going against the exclusion's plain language.

Indeed, Avalon concedes that some types of construction operations would find protection under the exclusion; for example, the construction of common areas and "the construction of walls to create unit boundaries."  Avalon thus argues that these types of construction operations should be included, while repair operations relating to the marketing and selling of new condominium units should not.  Such a construction is belied by the plain language of the exclusion, for the exclusion does not bar *some* construction operations pertaining to the conversion; on the contrary, it bars *all* such operations.

Moreover, the word "all" is not ambiguous.  When used as a modifier, it connotes the total set of the modified.  Thus, "all construction operations" refers to every kind, or every sort of construction operation.  Hence, all, or every kind of construction operation related to the condominium conversion should be covered.  The list of such operations should not be artificially limited.

Avalon ignores this inclusive language, and also fails to explain why some types of construction operations such as the construction of common areas should be covered, while Paramount's work should not.  None of these hypothetical construction projects are necessary to the legal process of conversion, and neither the construction of common areas nor the construction of partition walls appear to be somehow more intimately related to the process of condominium conversion than the undertaking of repairs.

Here, it is undisputed that the construction repair operations that took place were related to the Developer's efforts to market and sell the condominiums.  A reasonable person would believe that the selling of condos is an essential part of any condominium conversion project and the repair work was clearly done in the furtherance of this goal.  In addition, the fact that the repair work was to be completed before the Developer handed over control of the Association to the individual unit owners further shows that the work "pertained to" the apartment to condominium conversion.

For all of the above-stated reasons, this Court concludes that the "Designated Work Exclusion" is unambiguous.  Thus, the Court concludes that the construction repair work performed by Paramount "pertained to" the "apartment to condominium conversion."[9]

### ii. Is the Exclusion Inapplicable Since the Work was Performed by a Sub-Contractor?

The "Designated Work Exclusion" excludes from coverage "your work" "shown in the Schedule" which is defined as "all construction operations pertaining to apartment to condominium conversion."  Avalon argues that work performed by a sub-contractor is an exception to this exclusion; thus, because the repair work was performed by a sub-contractor, the exclusion should not apply.

[9]As the Court has concluded that the exclusion is unambiguous, it has not considered extrinsic evidence.  Notably, however, the extrinsic evidence in this case makes it clear that the parties to the insurance contract believed that the construction repair work was related to the apartment to condominium conversion. For example, the AASI "Final Disclosure of Building Conditions" Report states in the introduction that: "The Developer intends to convert the project from rental to condominium under the name of Avalon at Clearwater, a Condominium.  *Prior to conversion,* the Developer intends to make, at its own expense, certain improvements."  (AASI, 2) Moreover, the report, and other materials contain additional statements making it clear that the construction repair work undertaken by Paramount was thought to be related to the conversion.

This argument simply misreads the contract, relying on the standard "damage to your work," "l," exclusion.  This standard provision excludes from coverage "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"  Importantly, however, this standard "l" exclusion contains an exception if the work was performed by a sub-contractor.

Here, the applicability of the exclusion is simply beside the point as Colony does not rely on this standard "l" exclusion.  On the contrary, Colony relies on an endorsement to the policy containing a bargained-for specific exclusion to the policy.  This exclusion states that "your work" (for purposes of this specific exclusion) refers to "all construction operations pertaining to apartment to condominium conversion."  Moreover, in the definition section "your work" is explicitly defined to include "work or operations performed by you *or on your behalf*" (emphasis added).  Subcontractor Paramount is therefore included in the definition of "your work" as it is undisputed that it performed the work on the Developer's behalf.  Thus, the Designated Work Exclusion applies to work performed by both the Developer and by the Developer's sub-contractor Paramount.

In sum, for all of the above reasons the Designated Work Exclusion applies to the construction repair work performed by Paramount.  Accordingly, Count XIV for waste, which relates to this construction repair work, is not potentially covered by the Colony policy.[10]

---

[10]Technically, the Designated Work Exclusion only excludes property damage to property that the Developer does not own; however, to the extent that the construction work caused damage to property that it did own, such damage would be excluded by the j(1) "property you own" exclusion discussed earlier.

## XV.   Count XV

Count XV of the RTAC alleges that the Developer breached various warranties as a result of the allegedly defective construction repair work performed by Paramount.  As discussed in detail above, damages arising from such work are excluded by the "Designated Work Exclusion."  Thus, Count XV is not potentially covered by the Colony policy.

## XVI.  Count XVI

Count XVI alleges that the Developer (and Paramount) negligently performed the construction repair work.  As discussed in detail above, damages arising from such work are excluded by the "Designated Work Exclusion."  Thus, Count XVI is not potentially covered by the Colony policy.

### B.    Colony's Duty to Defend Counts I-XVI

The duty of an insurer to defend its insured "depends solely on the allegations in the complaint filed against the insured." *Tropical Park v. United States Fid. & Guar. Co.,* 357 So.2d 253, 256 (Fla. 3rd DCA 1978).  If the Complaint alleges facts that fairly and potentially bring the case within coverage, the duty to defend arises. *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n,* 758 So.2d 692, 695 (Fla. 4th DCA 1999).

An insurer's duty to defend is broader than its duty to indemnify for the duty to defend depends only upon the allegations of the complaint, not on proven facts. *See, e.g., Allstate Ins. Co. v. RJT Enterprises, Inc.,* 692 So.2d 142, 144 (Fla. 1997).  Moreover, if an insurer has a duty to defend at least one count in the underlying complaint, it follows that the insurer

has the duty to defend the entire action. *Travelers Co. Of Ill. V. Royal Oak Enterprises, Inc.,* 344 F.Supp.2d 1358, 1365 (M.D. Fla. 2004).

The Court determines the duty to defend by deciding whether the alleged facts in the complaint are potentially covered by the policy. *McCreary,* 758 So.2d at 695. If the court has doubts as to coverage, it must decide these doubts in favor of the insured, and conclude that the insurer has a duty to defend. *Jones v. Florida Ins. Guar. Ass'n, Inc.,* 908 So.2d 435, 443 (Fla. 2005).

In Florida, at least where the declaratory judgment action will not decide facts that will be decided in the underlying case, courts should decide an insurer's duty to defend *before* the resolution of the underlying case as it is "irreparable injury" for an insurer to defend a case when no duty to defend exists. *Indemnity Ins. Co. Of N. America v. Ridenour*, 629 So.2d 1053, 1054 (Fla. 2nd DCA 1993).

Here, it is appropriate for the Court to decide the issue of Colony's duty to defend its insureds. First, the Complaint and Answer have both been filed in the underlying state court action, making the issue ripe for review. Second, this Court has not needed to decide *any* factual issues in this declaratory judgment action, let alone those that might be at issue in the state case.[11] Third, under Florida law, Colony would suffer "irreparable injury" if the decision on its duty to defend were delayed.[12]

---

[11]On the contrary, this Court has solely decided legal issues concerning the interpretation and construction of the Colony insurance contract.

[12]Notably, both Colony and Avalon concede that the issue is ripe for review.

For all of these reasons, the Court concludes that it is appropriate to decide the issue of Colony's duty to defend at this time.  As none of the various counts alleged in the RTAC are potentially covered by Colony's insurance policy, the Court concludes that Colony has no duty to defend any of its insureds in the underlying state action for any of the counts in the RTAC.

### C.    Colony's Duty to Indemnify Counts I-XVI

The duty to indemnify is narrower than the duty to defend as "[t]he duty to indemnify, unlike the duty to defend, turns on the actual facts, not the facts alleged in the complaint." *Colony Ins. Co. v. Nicholson,* 2010 WL 2844802, *3 (S.D. Fla. 2010) (quoting *Colony Ins. Co. v. Barnes,* 410 F.Supp.2d 1137, 1143 (N.D. Fla. 2005)).

In Florida, the issue of indemnity should sometimes be stayed until the resolution of the underlying insurance action.  Specifically, a Court should not decide the indemnity issue before the resolution of the underlying action if: (1) deciding the declaratory judgment action on the issue of indemnity would necessitate the Court deciding factual matters at issue in the underlying case, and/or; (2) deciding the issue of indemnity would raise "the possibility of inconsistent adjudications which may result where the plaintiff in the underlying case has not been joined in the declaratory action." *Home Ins. Co. v. Gephart,* 639 So.2d 179, 180 (4th DCA 1994).

Where such concerns do not exist, it is appropriate for the Court to determine the issue of coverage prior to the resolution of the underlying suit.  *Id.; See also, Higgins v. State*

*Farm Fire & Casualty Co.,* 894 So.2d 5, 17 (Fla. 2004); *Britamco Underwriters, Inc. v. Central Jersey Investments, Inc.,* 632 So.2d 138, 141 (4th DCA 1994) ("Generally, an insurance carrier should be entitled to an expeditious resolution of coverage where there are no significant, countervailing considerations.   A prompt determination of coverage potentially benefits the insured, the insurer and the injured party.")

Here, the Court concludes that summary judgment is appropriate on the issue of indemnity. In making such a determination, this court notes that it has not needed to decide *any* factual issues, let alone those which might be at issue in the underlying suit.   On the contrary, this Court has merely decided the legal issues of contract interpretation and construction.   Moreover, these legal issues relate purely to the issue of coverage and do not reach the issue of liability; thus, the Court has not needed to decide any dispositive legal issues in the underlying action.

In addition, as Avalon, the Plaintiff in the underlying case, is joined as a Defendant in this action, "the possibility of inconsistent adjudications which may result where the plaintiff in the underlying case has not been joined in the declaratory action" is simply inapposite here. *See Gephart,* 639 So.2d at 180.

For all of these reasons, it is appropriate for this Court to rule on the indemnity issue at this time.  Such a ruling will fully settle the legal disputes of the parties to this declaratory judgment action, possibly promote settlement between the parties in the underlying state

court action,[13] and bring about an "expeditious resolution of coverage...potentially benefit[ing]" all involved. *Britamco,* 632 So.2d at 141. Accordingly, the Court concludes that Colony has no duty to indemnify any of its insureds for any of the counts as plead in the RTAC as none of these counts are potentially covered by the Colony policy.

It is therefore **ORDERED AND ADJUDGED** that:

1. Plaintiff Colony Insurance Company's Second Motion for Summary Judgment (Dkt. 48) is hereby GRANTED.

2. Defendant The Avalon at Clearwater Condominium Association, Inc.'s Second Motion for Summary Judgment (Dkt. 97) is hereby DENIED.

3. The Clerk is directed to enter final summary judgment in favor of Plaintiff Colony Insurance Company and against Defendants MONTECITO RENAISSANCE, INC., MONTECITO RENAISSANCE, LLP, WILLIAM S. ROGERS, JR., DEBBIE CLARK, EDWARD W. CONK, and AVALON AT CLEARWATER ASSOCIATION, INC.

4. The Clerk is directed to terminate any pending motions as moot, and to close this case.

**DONE** and **ORDERED** in Tampa, Florida on September 30, 2011.

**Copies furnished to:**
Counsel/Parties of Record

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

S:\Odd\2009\09-cv-1469.msj48.wpd

---

[13]The Supreme Court of Florida has stated that "all parties are in a better position to enter into settlement negotiations when the decision as to coverage has been put to rest," and has therefore found that the promotion of settlement is one reason in favor of resolving the indemnity issue before the resolution of the underlying case. *Higgins,* 894 So.2d at 16-17.